# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DEBORAH WILSON,**

        **Plaintiff,**

**v.**                                      **Case No:   6:13-cv-1840-Orl-37GJK**

**WALGREEN INCOME PROTECTION
PLAN FOR PHARMACISTS AND
REGISTERED NURSES, WALGREEN
CO. and SEDGWICK CLAIMS
MANAGEMENT SERVICE, INC.,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

        This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)** |
| **FILED:** | **October 24, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 32)** |
| **FILED:** | **October 29, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

I.     **BACKGROUND.**

This case (hereinafter "*Wilson* II"), which arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, is now before this Court for a second time. *See* No. 6:12-cv-47-Orl-19TBS (hereinafter, "*Wilson* I"). The pertinent case history is detailed below.

A.  *Wilson* **I.**

*Wilson* I commenced on January 11, 2012, when Deborah Wilson (the "Plaintiff") filed a complaint against Sedgwick Claims Management Services, Inc. ("Sedgwick"), Walgreen Income Protection Plan for Pharmacists and Registered Nurses (the "IPP"), and Walgreen Co. ("Walgreens") (collectively, the "Defendants") alleging that Defendants violated Section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B), by failing to award Plaintiff long-term disability benefits after April 8, 2011 through the date the complaint was filed. *Wilson* I, Doc. No. 1-3.[1]

On December 26, 2006, Plaintiff began her employment as a pharmacist at Walgreens. R. 74; *Wilson* I, Doc. Nos. 1-3 at ¶ 4; 49 at 7.[2]  Walgreens sponsors the IPP for the benefit of its employees, such as the Plaintiff. *Wilson* I, Doc. Nos. 1-3 at ¶¶ 4-5; 49 at 2; 74 at 2. Walgreens is the plan administrator for the IPP, as well as its sponsor. *Wilson* I, Doc. Nos. 40 at 3; 49 at 2. Sedgwick is the claim administrator. *Wilson* I, Doc. No. 1-3 at ¶ 7. The IPP provides short-term

---

[1] The procedural history of *Wilson* I, and a thorough discussion of the medical record through April 29, 2013, is contained in United States District Court Judge Patricia C. Fawsett's April 29, 2013 Findings of Fact and Conclusions of Law (the "Order"). *Wilson* I, Doc. No. 74 at 1-50. For purposes of establishing background information only, and except as otherwise noted herein, the undersigned adopts by reference Judge Fawsett's findings of facts contained in the Order. *Id.* Citations to *Wilson* I are specifically identified as "*Wilson* I, Doc. No. __ at __ ." All other citations are to docket entries in this case and are identified as "*Wilson* II, Doc. No. __ at __."

[2] The administrative record in this case may be found at docket entry nos. 27-1 through 27-17 in this action and is cited herein as "R. __". The specific page numbers cited may be found at the bottom right hand corner of each page in *Wilson* II, Doc. Nos. 27-1 through 27-17.

("STDB") and long-term disability benefits ("LTD") to eligible participants under the plan, as well as a claim procedure process.   R. 825-845; *Wilson* I, Doc. No. 40 at 2.

On or about February 25, 2010, Plaintiff was no longer able to work due to "severe back pain, degenerative disc disease, and related conditions."   *Wilson* I, Doc. Nos. 49 at 7.   Plaintiff applied for and was awarded STDB under the IPP from February 25, 2010 through August 23, 2010.   R. 951; *Wilson* I, Doc. Nos. 49 at 7; 74 at 25-26.   On May 14, 2010, while receiving STDB, Plaintiff underwent spinal fusion surgery.   R. 937-939; *Wilson* I, Doc. No. 74 at 23.   On August 10, 2010, Plaintiff applied for LTD and Sedgwick informed Plaintiff that under the terms of the IPP she must apply for Social Security Disability benefits ("SSD").   R. 63-64, 78-80; *Wilson* I, Doc. No. 74 at 27.

Sedgwick initially approved Plaintiff's LTD application for benefits from August 24, 2010 through September 2, 2010.   R. 71; *Wilson* I, Doc. No. 74 at 28.   From August 2010 until December 2, 2010, Sedgwick periodically continued Plaintiff's LTD benefits in increments of several weeks to a month.   R. 89, 100; *Wilson* I, Doc. No. 74 at 28.

On January 4, 2011, Sedgwick issued a decision terminating Plaintiff's LTD effective as of December 3, 2010.   R. 151-153; *Wilson* I, Doc. No. 74 at 32.   Plaintiff appealed the initial termination decision.   R. 157-158; *Wilson* I, Doc. No. 74 at 33.   On March 10, 2011, Sedgwick upheld the decision to terminate Plaintiff's LTD as of December 2, 2010, but Sedgwick offered Plaintiff an opportunity for a second administrative appeal.   R. 203-206; *Wilson* I, Doc. No. 74 at 40-41.[3]   On April 27, 2011, the Social Security Administration awarded Plaintiff disability benefits from February 25, 2010.   R. 215-222.

---

[3] The IPP does not contain any provision for a second administrative appeal.   *See* R. 841-842.   Nevertheless, Sedgwick's notice instructed Plaintiff that she would be entitled to bring a civil action under ERISA only after pursuing her administrative remedies through the second appeal.   R. 205.

On May 10, 2011, Plaintiff brought a second administrative appeal.   R. 209-214; *Wilson*

I, Doc. No. 74 at 41-42.   On July 28, 2011, Sedgwick issued a decision finding:

> Based on our review of the information provided, it has been concluded that the documentation partially supports that you remain precluded from performing your own occupation as a Pharmacist. As such, we have made a determination to overturn the previous claim in part.   Your claim has been reinstated from December 3, 2010 through April 8, 2011.   However, benefits from April 9, 2011 to your return to work date remain denied as there is insufficient medical documentation to determine your continued eligibility for benefits. . . .
>
> The medical information reviewed revealed a disabling diagnosis of multilevel lumbar fusion involving the lumbar space with persistent back pain.   You have undergone the surgeries to remit the persistent back pain with ongoing treatment for pain.   Your occupation as a Pharmacist requires continual walking and standing and the medical information reviewed supports your ability to perform only sedentary level work until your status is reevaluated to determine if you have increased work capacity as of April 9, 2011.   <u>You were offered an opportunity to submit additional medical information for review on Appeal.   You declined and advised that you would not be submitting any additional medical information on your second level of Appeal review</u>.
>
> After a thorough review of the information provided, the determination has been made to partially uphold the denial of benefits.   There is insufficient medical documentation to determine if you remain eligible for continued benefit consideration beyond April 8, 2011.

R. 257-258 (emphasis added).   Sedgwick's final decision reinstated Plaintiff's LTD from

December 3, 2010 through April 8, 2011, but denied any additional LTD benefits beyond that date

because Plaintiff failed to provide medical documentation supporting a continuation of her LTD

beyond April 8, 2011.   R. 257-259; *Wilson* I, Doc. No. 74 at 46-49.   Thus, Sedgwick's decision

to deny Plaintiff LTD beyond April 8, 2011 was based on Plaintiff's failure to submit additional

medical records supporting her continued disability beyond that date.   R. 258; *Wilson* I, Doc. No.

74 at 47-49.[4] Walgreens has refused to pay Plaintiff LTD since April 8, 2011. *Wilson* I, Doc. No. 1-3 at ¶ 13.

In *Wilson* I, the Plaintiff sought the following relief:

> (a) [A declaration that] Plaintiff is entitled to [LTD] from April 8, 2011 to [January 12, 2012,] the date [*Wilson I* was filed];
>
> (b) [An award of LTD] benefits in the amount [of] $26,316.00, together with pre-judgment interest on each monthly payment from the date it became due until the date it is paid;
>
> (c) [An award of] reasonable attorneys' fees and costs incurred in filing this action;
>
> (d) [An award of] such other and further relief as this Court deems just and proper, including but not limited to:
>
>> i. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits; and
>>
>> ii. remanding Plaintiff's claim to [Walgreens] for further action to address continuing benefits after the final date of benefits awarded by this Court. . . .

*Wilson* I, Doc. No. 1-3 at ¶ 28. The Court denied the parties' respective motions for summary judgment. *Wilson* I, Doc. Nos. 40-41, 49.[5] On April 8, 2013, the Court held a bench trial at which it received documentary and testimonial evidence. *Wilson* I, Doc. Nos. 67, 74, 81.

---

[4] The Court found that "before the Final Benefits Determination, Sedgwick did not provide Plaintiff with fair notice that she was required to submit medical documentation to negate a finding that her condition was so improved by April 9, 2011 that she was no longer qualified as 'disabled' under the [IPP]." *Wilson* I, Doc. No. 74 at 49.

[5] In doing so, the Court concluded that the "Defendants' determination that Plaintiff's disability ceased on April 9, 2011 was wrong." *Wilson* I, Doc. No. 49 at 18. The Court also found:

> Plaintiff has met her burden to establish that she was disabled through at least May 11, 2011. . . . However, questions of fact exist as to whether Plaintiff was disabled after May 11, 2011. These questions may be resolved in trial, or the matter may have to be remanded for additional findings by Sedgwick and/or Walgreen[s]. *Byars v. The Coca-Cola Co*., 517 F.3d 1256, 1264-65 (11th Cir. 2008) (holding district court erred in addressing issue not first considered by the

On April 29, 2013, the Court entered its Findings of Fact and Conclusions of Law (the "Order"). *Wilson* I, Doc. No. 74 at 1-66. In the Order, the Court noted that, while it had determined that Sedgwick's "final determination was wrong under a *de novo* review, and that Plaintiff met her burden to establish that she was 'disabled' through at least May 11, 2011," the Court "denied the parties' [motions for summary judgment] because questions of fact existed as to whether the grant of discretion to Sedgwick under [the summary plan description, IPP,] was effective to entitle Defendants to a . . . deferential standard of review." *Wilson* I, Doc. No. 74 at 3. Thus, the bench trial was held to resolve that issue. *Id*. The Court found that Plaintiff was entitled to judgment under the six-step sequential process set forth in *Williams v. BellSouth Telecomms., Inc*., 373 F.3d 1132, 1137-38 (11th Cir. 2004) (as modified by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Capone v. Aetna Life Ins. Co*., 592 F.3d 1189, 1195-96 (11th Cir. 2010)). *Wilson* I, Doc. No. 74 at 52-65.[6]

The Court reached its conclusions on two alternative bases. *Wilson* I, Doc. No. 74 at 52-65. First, the Court determined that Sedgwick's final decision was *de novo* wrong and, because the IPP does not conform to all the requirements of a benefits plan under 29 U.S.C. § 1102(b), Defendants failed to meet their burden to establish that Sedgwick was granted discretion under the

---

plan administrator).

*Wilson* I, Doc. No. 49 at 18 n.10. The Court also determined that the IPP was only the summary plan description not the plan itself and, therefore, pursuant to *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1877-78 (2011), the Court could not give legal effect to the IPP's description of vested discretion in Sedgwick. *Wilson* I, Doc. No. 49 at 19. Thus, the Court instructed Defendants to submit the "complete Plan documents" at the bench trial. *Id*.

[6] The six-step evaluation process is as follows: (1) the court determines whether the claim's administrator's decision is *de novo* wrong; (2) If so, then the court determines if the claims administrator was vested with discretion in reviewing claims, if not then the inquiry ends; (3) if so, then the court must determine whether the decision was arbitrary and capricious or an abuse of discretion; (4) if so, then the court must consider whether the administrator operated under a conflict of interest; (5) if there was no conflict and the decision is reasonable, then the inquiry ends; (6) if there is a conflict of interest, then the Court must assess the severity of the conflict and consider whether it is relevant to the issue of whether the decision was an abuse of discretion. *See Wilson* I, Doc. No. 74 at 52-54 (citing authority).

IPP to act as an administrator or fiduciary.  *Wilson* I, Doc. No. 74 at 54-59.  Accordingly, the Court found that the *Williams* inquiry was at an end and Plaintiff was entitled to judgment.  *Wilson* I, Doc. No. 74 at 59.

In the alternative, the Court continued the *Williams* sequential evaluation process under the deferential standard of review.  *Wilson* I, Doc. No. 74 at 59-65.  Under the arbitrary and capricious standard of review, the Court found that Sedgwick's final decision was "not based on such evidence as a reasonable person would accept as adequate to support a conclusion."  *Wilson* I, Doc. No. 74 at 61.  In doing so, the Court found: it "could identify no record evidence that . . . would . . . support the conclusion that Plaintiff was capable of continuous walking and standing for eight hours a day in December 2010 or in April 2011"; Sedgwick's basis for discontinuing Plaintiff's LTD as of April 8, 2011, due to Plaintiff's failure to submit sufficient medical evidence supporting LTD after that date was not supported by the evidence; Sedgwick never formally notified Plaintiff that it was considering extending Plaintiff's LTD benefits beyond December 3, 2010, the original termination date from which Plaintiff appealed; and Sedgwick never advised Plaintiff that her appeal would be denied if she failed to submit medical evidence relating to her condition after April 8, 2011.  *Wilson* I, Doc. No. 74 at 61-63.[7]  Accordingly, the Court determined that Sedgwick's final determination was arbitrary and capricious under *Williams'* third step.  *Id*.

Ultimately, the Court concluded that the case must be remanded "to the administrator for full development of the record and evaluation of Plaintiff's claim for LTD benefits after April 8, 2011."  *Wilson* I, Doc. No. 74 at 65 (citing *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890

---

[7] The Court also found that Sedgwick's handling of Plaintiff's claim was unreasonable for several other reasons, including its failure to provide medical consultants with all of the relevant evidence and to follow its own claim procedures.  *Wilson* I, Doc. No. 74 at 64-65.

F.2d 1137, 1140 (11th Cir. 1989); *Acree v. Hartford Life and Accident Ins. Co.*, 917 F. Supp. 2d 1296, 1321-22 (M.D. Ga. 2013)).   On May 22, 2013, the Court entered an Amended Final Judgment in favor of Plaintiff, remanding the case to Walgreens, and awarding Plaintiff $58,578.83 in attorneys' fees and costs.   *Wilson* I, Doc. No. 80 at 1-2.

### B.  Administrative Events After Remand.

On June 17, 2013, Plaintiff's counsel sent a letter to Defendants' counsel, inquiring as to the "time frame" for the administrative proceedings on remand, including whether those proceedings would be treated as a new claim or an appeal, providing additional medical evidence, and inquiring as to how Plaintiff should provide Sedgwick with additional evidence.   R. 653-718; *Wilson* II, Doc. Nos. 27-11 at 1-55; 27-12 at 1-10.   On June 28, 2013, counsel for Defendants responded stating that Sedgwick would handle the administrative process on remand as an "additional appeal."   *Wilson* II, Doc. No. 32-3 at 1.[8]   The letter further states that Plaintiff should contact Sedgwick to "initiate the appeal."   *Id.*

On July 11, 2013, a notation in Sedgwick's claim file indicates that the case has been remanded for consideration of Plaintiff's entitlement to additional LTD, Plaintiff will be given an opportunity to submit additional medical evidence and that an independent medical examination ("IME") will be scheduled.   R. 13.   On July 17, 2013, Plaintiff's counsel sent Sedgwick a letter containing supplemental medical evidence and requesting that Sedgwick "not begin processing the appeal yet," until Plaintiff has an opportunity to provide further medical evidence.   R. 654.   On July 22, 2013, Sedgwick left a voice mail for Plaintiff's counsel regarding Sedgwick's "re-review

---

[8] The June 28, 2013 letter is not part of the administrative record, but it was attached as an exhibit to Plaintiff's motion for summary judgment in this action.   *See Wilson* II, Doc. No. 32-3 at 1.   Defendants have not raised any issue with respect to the June 28, 2013 letter.

for appeal." R. 12.   On July 29, 2013, Sedgwick received Plaintiff's counsel's July 17, 2013 letter. R. 11-12.

On August 8, 2013, Plaintiff's counsel mailed Sedgwick a letter and additional medical evidence. R. 725-730.   In the letter, Plaintiff's counsel represents that "[t]his should complete our submittal of materials for review of [Plaintiff's] claim for benefits beyond April 8, 2011. Please begin your review of her claim." R. 725.   On August 21, 2013, Sedgwick received that letter. R. 11.   On August 22, 2013, Plaintiff's counsel sent Sedgwick via facsimile a second letter, which included additional medical evidence. R. 731-739.   In that letter, Plaintiff's counsel again represents that "[t]his should complete our submittal for review of [Plaintiff's] claim for benefits beyond April 8, 2011.   Please begin your review of her claim." R. 731.[9]

On September 24, 2013, Sedgwick attempted to contact Plaintiff's counsel via telephone, spoke with counsel's paralegal, and memorialized the conversation via letter on the same day.   R. 10-11, 741.   The letter provides:

> We understand the documentation provided by your office on July 17, 2013; August 8, 2013; and August 22, 2013 completes [Plaintiff's] file for review of benefits beyond April 8, 2011.
> At this time we will proceed with the review of [Plaintiff's] claim for benefits under [IPP].   We will notify you of our decision no later than November 7, 2013.

R. 741 (emphasis added).   Thus, on September 24, 2013, Sedgwick stated that it would begin reviewing Plaintiff's claim and that it would issue a decision no later than November 7, 2013.   R. 741.[10]

---

[9]  A notation in Sedgwick's claim file provides that Sedgwick received that letter on August 26, 2013.   R. 11.

[10]  In Defendants' Motion, they maintain that until September 24, 2013, when Sedgwick confirmed by telephone that Plaintiff would not be submitting additional medical evidence, Sedgwick was confused by Plaintiff's August 8 and 21st requests that Sedgwick begin reviewing Plaintiff's appeal.   *Wilson* II, Doc. No. 27 at 12-13.

On November 7, 2013, Sedgwick notified Plaintiff's counsel via facsimile that Sedgwick required additional time to review Plaintiff's claim and Sedgwick would notify Plaintiff of its decision by December 7, 2013.  R. 9, 746.   That notice does not explain why Sedgwick required an extension of time.  R. 746.

### C.  *Wilson* II.

On November 25, 2013, approximately ninety-five (95) days after Plaintiff's final written request that Sedgwick begin its review of Plaintiff's claim and sixty-two (62) days after Sedgwick stated it would begin reviewing Plaintiff's claim on remand, Plaintiff filed a complaint (the "Complaint") against Defendants, thereby initiating this action.   *Wilson* II, Doc. No. 1; R. 731-739 (Plaintiff's August 22, 2013 written request for review of claim); 741 (Sedgwick's September 24, 2013 notice that it would begin review).[11]   In the Complaint, Plaintiff contends that, after remand in *Wilson* I, she submitted sufficient evidence to Sedgwick demonstrating that she remained disabled from April 9, 2011 to November 25, 2013.   *Wilson* II, Doc. No. 1 at ¶ 15.   In the Complaint, Plaintiff alleges that as of November 25, 2013, Sedgwick "has failed to act on [Plaintiff's] claim within the time deadlines required by 29 C.F.R. § 2560.503-1."   *Wilson* II, Doc. No. 1 at ¶¶ 4-5.   Pursuant to 29 C.F.R. § 2560.503-1(l), due to Sedgwick's alleged failure to act in a timely fashion, Plaintiff alleges that her LTD claim is deemed denied on remand and Plaintiff

---

[11] After the Complaint was filed in this case, several events occurred, which are part of the administrative record.   On December 3, 2013, Sedgwick referred Plaintiff's claim and medical evidence to Dr. Richard Kaplan for an independent review.   R. 7-8.   On December 6, 2013, Dr. Kaplan submitted his report to Sedgwick, which opined that Plaintiff was not under a disability as of April 9, 2011.   R. 7, 748-53.   Between December 9 and 12, 2013, Sedgwick attempted to schedule an IME of Plaintiff to be held on December 16, 2013.   R. 3-7.   On December 12, 2013, Plaintiff's counsel informed Sedgwick that Plaintiff would not be attending an IME due to the Plaintiff's filing of *Wilson* II.   R. 758. On February 11, 2014, Sedgwick sent Plaintiff's counsel a letter stating that it was prepared to issue a final decision on Plaintiff's LTD claim, but also asking if Plaintiff would reconsider her decision not to participate in an IME, the results of which Sedgwick stated it would consider before making a final decision.   R. 761.   On March 11, 2014, more than three months after the Complaint was filed, Sedgwick issued its final decision finding Plaintiff not disabled as of April 9, 2011.   R. 762-764.   For the reasons set forth below, the undersigned concludes that the events occurring after the filing of this action are not material to the disposition of this case.

is deemed to have exhausted her administrative remedies.   *Wilson* II, Doc. No. 1 at ¶¶ 6-7.   The

"deemed denied" or "deemed exhausted" doctrine embodied in Section 2560.503-1(l) provides

that if the claim administrator fails to act in the time provided by the the plan or the regulations,

then the claim is deemed denied by operation of law and the plaintiff is thereafter free to pursue

all legal remedies under ERISA without having to further exhaust administrative remedies.   *See*

29 C.F.R. § 2560.503-1(l) (2015); *Torres v. Pittston Co.*, 346 F.3d 1324, 1333-1334 (11th Cir.

2003) (explaining regulation, including prior versions).   Thus, Plaintiff contends that despite not

obtaining a final decision of her claim on remand, her action for an award of LTD under ERISA

before this Court is ripe because Sedgwick failed to timely act on her claim and, pursuant to 29

C.F.R. § 2560.503-1(l), the claim was denied by operation of law.   *Wilson* II, Doc. No. 1 at ¶¶ 6-

7.

   Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff requests the following relief:

(a) [A finding that] Plaintiff is entitled to [LTD] from April 8, 2011 through [November 25, 2013];

(b) [An award of] benefits in the amount not paid to the Plaintiff from April 8, 2011 to [November 25, 2013] − a total of $90,644.00, together with pre-judgment interest on each monthly payment from the date it became due until the date it is paid;

(c) [An award of] reasonable attorney fees and costs; and

(d) [S]uch other and further relief as this Court deems just and proper, including but not limited to:

  i. A declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

  ii. Remanding Plaintiff's claim to [Walgreens] for further action to address continuing benefits after the final date of benefits awarded by this Court. . . .

*Wilson* II, Doc. No. 1 at 4-5.   Thus, similar to the relief requested in *Wilson* I, Plaintiff requests that the Court award Plaintiff LTD from April 9, 2011 through the date the operative complaint was filed.   *Id.*

## II.   CROSS-MOTIONS FOR SUMMARY JUDGMENT.

### A. Defendants' Motion.

On October 24, 2014, Defendants filed their Dispositive Motion for Summary Judgment (the "Defendants' Motion"), arguing that they are entitled to judgment as a matter of law or dismissal as to Plaintiff's claims that Defendants violated ERISA by failing to timely render a decision on Plaintiff's LTD claim following remand.   *Wilson* II, Doc. No. 27 at 1, 17-18, 20 n.38, 22-24 n.41.   First, Defendants assert that the arbitrary and capricious standard of review applies to this case regardless of whether Sedgwick failed to timely decide Plaintiff's claim on remand. *Wilson* II, Doc. No. 27 at 17 n.34 (citing *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993)).   Second, Defendants maintain that Plaintiff failed to exhaust her administrative remedies by filing the Complaint before Sedgwick rendered a final decision on the merits and by failing to attend an IME.   *Id.*   Defendants contend the deadlines imposed 29 C.F.R. § 2560.503-1 do "not address the procedures applicable to court-ordered remands," and the Order in *Wilson* I did not specify the applicable time deadlines on remand.   *Wilson* II, Doc. No. 27 at 18 nn.36-37.   Thus, Defendants argue that there is no basis for applying the deemed denied doctrine found in 29 C.F.R. § 2560.503-1 to the facts of this case, and the case should be dismissed for Plaintiff's failure to exhaust administrative remedies.   In the alternative, Defendants argue that Sedgwick acted in a timely manner or Sedgwick substantially complied with the deadlines contained in 29 C.F.R. § 2560.503-1, which warrants dismissal for failing to exhaust administrative remedies.   *Wilson* II, Doc. No. 27 at 18-24.   Third, should the Court reach the

merits of Sedgwick's March 11, 2014 decision (R. 762-764), Defendants maintain that it is supported by reasonable grounds.   *Wilson* II, Doc. No. 27 at 24-25.

On November 22, 2014, Plaintiff filed a response to Defendants' Motion.   *Wilson* II, Doc. No. 33.   In it, Plaintiff argues that the Defendants' Motion should be denied because the proper standard of review is *de novo*, Sedgwick failed to timely act on Plaintiff's claim on remand, Plaintiff's claim was denied by operation of law, and the evidence of record prior to that time establishes that nothing has changed in her condition since April 8, 2011.   *Wilson* II, Doc. No. 33 at 2-19.

**B.  Plaintiff's Motion.**

On October 29, 2014, Plaintiff filed a Dispositive Motion for Summary Judgment (the "Plaintiff's Motion").   *Wilson* II, Doc. No. 32.   Plaintiff argues that Sedgwick failed to comply with the deadlines set forth in the IPP and 29 C.F.R. § 2560.503-1 and, therefore, Plaintiff's claim is deemed denied by operation of law no later than November 20, 2013.   *Wilson* II, Doc. No. 32 at 15-21.   Plaintiff further maintains that because her claim should be deemed denied as of November 20, 2013, none of the administrative evidence obtained after that date should be considered by the Court.   *Wilson* II, Doc. No. 32 at 21 ("[T]he only facts addressing [Plaintiff's] disability that were in the record before the time period expired for Sedgwick to make its claim decision were a) those stated in the Order in Wilson-I, and b) the medical evidence [Plaintiff] submitted on July 17, 2013, August 8, 2013, and August 22, 2013.").   Applying the *de novo* standard of review, Plaintiff argues that the additional evidence demonstrates that Plaintiff is entitled to an award of LTD benefits.   *Wilson* II, Doc. No. 32 at 21-24.   Plaintiff maintains that she is entitled to judgment as a matter of law, an award of LTD benefits from April 9, 2011 through

November 25, 2013, a remand for consideration of LTD benefits after November 25, 2013, and an award of attorneys' fees and costs.   *Wilson* II, Doc. No. 32 at 24-25.

On November 24, 2014, Defendants filed a response to Plaintiff's Motion.   *Wilson* II, Doc. No. 34.   In it, Defendants maintain that Plaintiff's Motion should be denied because Sedgwick timely acted on remand, Plaintiff failed to exhaust administrative remedies before filing suit, and Sedgwick issued a final decision on March 11, 2014, which is supported by reasonable grounds under the deferential standard of review.   *Wilson* II, Doc. No. 34 at 1-18.   In the alternative, Defendants request a remand for an IME followed by a new determination of Plaintiff's claim. *Wilson* II, Doc. No. 34 at 16-17.

## III.   <u>STANDARD OF REVIEW.</u>

Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a), (c).   In the ERISA context, rather than strictly applying the traditional summary judgment standard, the Court generally applies the six-step evaluation process set forth in *Williams*, 373 F.3d at 1137-38 (as modified by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)); *see also Capone v. Aetna Life Ins. Co*., 592 F.3d 1189, 1195-1196 (11th Cir. 2010) (explaining same).[12]

## IV.   <u>ANALYSIS.</u>

### A.  **Claim And Appeal Deadlines.**

29 C.F.R.  §§ 2560.503-1(f)(3) and (i)(3)(i) provide that in disability claims, the claim administrator shall notify the claimant of the decision within 45 days of the initial claim or appeal being submitted to the claim administrator for review.   *Id*.   For initial claims, the 45 days may be

---

[12] *See supra* n.6.

extended in 30 day intervals, provided the claims administrator notifies the claimant prior to expiration of any given time period, and informs the claimant that the extension is necessary due to matters beyond the administrator's control.   29 C.F.R. § 2560.503-1(f)(3).   For appeals, the 45 days may be extended for an additional 45 days, but "the notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review."   29 C.F.R. §§ 2560.503-1(i)(1); (i)(3)(i).

The IPP mirrors the above-referenced regulation.   R. 840-842.   With respect to initial claims, the IPP provides:

> All formal benefit claims under the [IPP] will be reviewed by <u>Sedgwick</u> CMS (the Claim Administrator), which <u>will make its decision</u>, based on the information submitted by you, <u>within 45 days after the claim is submitted</u>.   By notice to you before this period ends, <u>the Claim Administrator may extend this deadline by up to 30 additional days if it determines that a decision cannot be made during the initial period for reasons beyond the control of the [IPP]. An extension notice will</u> specify the length of the extension and <u>inform you that a decision cannot be made within the deadline because of reasons beyond the control of the Claim Administrator.</u> A second extension of up to an additional 30 days may also be declared.   If such an extension is necessary, the notification shall include a description of the circumstances requiring the extension and an estimate of the decision date.

R. 841 (emphasis added).   Thus, for initial claims, Sedgwick must make a decision within 45 days after the claim is formally submitted and it may obtain two (2) extensions of up to 30 days each, but only if it determines that a decision cannot be made within the deadline because of reasons beyond the control of the Claim Administrator and gives proper notice of same to the claimant. R. 841.

With respect to decisions on appeal, the IPP provides:

> [Y]ou will be notified of the benefit determination <u>within 45 days of the receipt of the appeal</u>.   By notice to you before this period ends, the Claim Administrator . . . <u>may extend this deadline by up to 45</u>

> additional days if it determines that a decision cannot be made during the initial period for reasons beyond the control of the [IPP]. An extension notice will specify the length of the extension and inform you that a decision cannot be made within the deadline because of reasons beyond the control of the Claim Administrator.

R. 842 (emphasis added).   Thus, the IPP provides that Sedgwick will make a determination on appeal within 45 days, but it may extend the deadline by up to 45 additional days before the initial period expires, but only if it determines that a decision cannot be made due to reasons beyond Sedgwick's control and gives the claimant proper notice.   *Id*.

### B. *De Novo* Review Applies in Deemed Denied or Deemed Exhausted Cases.

Defendants maintain that the deferential standard of review applies even if Sedgwick failed to timely act on Plaintiff's claim on remand because the IPP vests discretion in Sedgwick to make decisions on claims.   *Wilson* II, Doc. No. 27 at 15-17 n.34.   Plaintiff contends that the standard of review is *de novo* based on the Court's prior Order in *Wilson* I.   *Wilson* II, Doc. No. 33 at 6-7. For the reasons set forth below, the undersigned finds that the *de novo* standard of review applies in deemed denied cases even if the plan vests discretion in the claim administrator.

29 C.F.R. § 2560.503-1(l) provides:

> Failure to establish and follow reasonable claims procedures.   In case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to purse any available remedies under [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*Id*.   Thus, Section 2560.503-1(1) provides that if an administrator fails to follow claim procedures consistent with deadlines established in the plan or regulations, then the claimant will be deemed to have exhausted their administrative remedies and will then be immediately entitled to pursue

any available remedies under ERISA in federal court on the basis that the plan failed to provide reasonable claims procedures.   *Id.*

A prior version of the regulation provided that if the administrator failed to provide the claimant with notice that the claim has been denied within a reasonable time, the claim is "deemed denied."   29 C.F.R. § 2560.503-1(e)(2) (1998).   The current version of the regulation provides that the claim administrator's failure to comply with the procedures contained in the plan or the regulations means that "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [ERISA]." 29 U.S.C. 2560.503-1(l).   While the "deemed denied" language has been replaced with "deem to have exhausted" language, the current regulation has the same legal effect as the prior regulation. *See Torres*, 346 F.3d at 1332 n.10 (noting that regulatory changes are only modifications in language); *Coates v. Guardian Life Ins. Co. of Am.*, No. 8:07-cv-291-T-26TBM, 2008 WL 269133, at *2 (M.D. Fla. Jan. 30, 2008) (regulatory changes represent simple change in language not legal effect); *Stefansson v. The Equitable Life Assurance Society of the United States and Disability Management Servs. Inc.*, 2005 WL 2277486, at *9-10 (M.D. Ga. Sept. 19, 2005) (same).   Thus, whether it is referred to as the "deemed denied" doctrine or the "deemed exhausted" doctrine, "the current regulation carries forward the same concept, telling the claimant in simple and straightforward terms what his next course of action is if the plan administrator fails to act in accordance with the applicable procedures."   *Stefansson*, 2005 WL 2277486, at *9 (M.D. Ga. Sept. 19, 2005).

The Eleventh Circuit has not addressed the appropriate standard of review in a deemed denied case.   *See Torres*, 346 F.3d at 1332-34; *Coates*, 2008 WL 269133, at *2 (M.D. Fla. Jan. 30, 2008); *Stefansson*, 2005 WL 2277486, at *11 (M.D. Ga. Sept. 19, 2005).   The majority of

other circuit courts that have addressed the issue have determined that the *de novo* standard of review applies even if the plan vests the claim administrator with discretion. *See Nichols v. Prudential Ins. Co. of Am.,* 406 F.3d 98, 109 (2d Cir. 2005) (*de novo* review applies to "deemed denied" appeal); *Gritzer v. CBS, Inc*., 275 F.3d 291, 295-96 (3d Cir. 2002) (failure of plan administrator to actually exercise discretion granted to it under plan warrants *de novo* review); *Seman v. FMC Corp. Retirement Plan For Hourly Employees*, 334 F.3d 728, 733 (8th Cir. 2003) ("When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be *de novo*."); *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003) ("where . . . a claim is 'deemed . . . denied' on review, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*."); *Rasenack v. AIG Ins. Co*., 585 F.3d 1311, 1315-1318 (10th Cir. 2009) (where administrator fails to render a timely final decision, claimant's administrative remedies are deemed exhausted by operation of law rather than through the exercise of administrative discretion and, therefore, *de novo* review applies).[13]  Two district courts within the Eleventh Circuit have also applied the *de novo* standard of review to deemed denied cases where the claim administrator failed to make a timely decision.  *See Coates*, 2008 WL 269133, at *2 (M.D. Fla. Jan. 30, 2008); *Stefansson*, 2005 WL 2277486, at *10-12 (M.D. Ga. Sept. 19, 2005). The underlying rationale for those holdings is that ERISA review is premised upon the application of trust law principles and where a claim administrator, who is a fiduciary vested with discretion under the terms of a plan, fails to exercise that discretion within the proscribed limits of the plan

---

[13] Only the Fifth and Sixth Circuits have held that the failure of a claim administrator, who is vested with discretion under the plan, to timely act may not be reviewed under the *de novo* standard of review.  *See Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993); *Daniel v. Eaton Corp*., 838 F.2d 263, 267 (6th Cir. 1988).

and regulations, then its decision is not entitled to deference. *Id.* In short, when a final decision is the mechanical result of the fiduciary's failure to act, that decision cannot logically be reviewed for an abuse of discretion which, in fact, was never exercised. *See generally Jebian*, 349 F.3d at 1105 ("Similarly, we will not defer when a decision is, under the Plan, necessarily the mechanical result of a time expiration rather than an exercise of discretion."). The undersigned is persuaded by the majority view and finds that when a claim administrator, vested with discretion under the plan, fails to exercise that discretion in a timely manner, resulting in the claim being deemed denied, that mechanical decision is subject to *de novo* review.

### C. Application.

#### 1. Plaintiff's Claim Deemed Denied.

On remand, Sedgwick had two options under the IPP – it could have treated Plaintiff's claim as an initial claim or as an appeal. R. 840-842.[14] On June 28, 2013, Defendants' counsel informed Plaintiff that Sedgwick would treat the case as an appeal. *Wilson* II, Doc. No. 32-3 at 1. On November 7, 2013, Sedgwick's correspondence stated that it was reviewing Plaintiff's "appeal." R. 746. Thus, the undersigned finds that Sedgwick treated Plaintiff's claim on remand as an appeal. *See Wilson* II, Doc. No. 32-3 at 1; R 746. Accordingly, under the IPP, Sedgwick was required to notify Plaintiff of its decision within 45 days "of receipt of the appeal." R. 842.[15]

---

[14] In Defendants' Motion, they argue that the Order remanding the case to Sedgwick did not specify the deadlines which were to apply to the case on remand. *Wilson* II, Doc. No. 27 at 18. Thus, Defendants suggest that Sedgwick did not fail to act in a timely manner because the Order failed to impose any deadlines. *Id.* The undersigned disagrees. The IPP provides the only two avenues – initial claim or appeal – which were available to Sedgwick on remand. R. 840-42. Moreover, even if Defendants were correct in so much as the IPP, the regulations and the Order fail to specifically address the procedures Sedgwick was required to follow on remand, then the Court's standard of review would be *de novo*, which is the standard the undersigned has applied, and, therefore, the result set forth below would be the same. *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189,1195 (11th Cir. 2010) (where plan does not grant administrator discretion in reviewing specific claim the standard of review is *de novo*).

[15] Regardless of whether Sedgwick treated Plaintiff's claim as an initial claim or an appeal on remand, the IPP required Sedgwick to issue a decision within 45 days. R. 841-842.

As of August 26, 2013, Sedgwick was in possession of all of Plaintiff's medical records and a formal request that Sedgwick begin its review.   R. 11, 731-39.   Forty-five (45) day later, on October 10, 2013, Sedgwick had not issued a decision or sought an extension of time.   Instead, on September 24, 2013, Sedgwick simply notified Plaintiff that it would begin its review.   R. 10-11, 741.   Thus, if time for review begins to run on August 26, 2013, Sedgwick failed to issue a decision or obtain an extension in the time provided by the express terms of the IPP.

Defendants maintain that Sedgwick was confused because Plaintiff had previously requested that Sedgwick begin its review on August 8, 2013, but Plaintiff later submitted additional medical records with a new request that Sedgwick begin its review on August 26, 2013.   *Wilson II*, Doc. No. 34 at 3-4.   Thus, without citation to any authority, Sedgwick essentially argues that Plaintiff's claim was equitably tolled until September 24, 2013, when Plaintiff confirmed she wanted Sedgwick to begin its review.   *Id*.   The undersigned rejects this argument for two (2) principle reasons.   First, generally, equitable tolling is only appropriate due to extraordinary circumstances that are both beyond the movant's control and unavoidable even with the exercise of diligence.   *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).   Here, there is no evidence of any extraordinary circumstance that was beyond Sedgwick's control, which prevented Sedgwick from beginning its review prior to September 24, 2013.   Thus, there is no basis for finding that the time for Sedgwick to render a decision under the IPP commenced any later than August 26, 2013.[16]

Second, even if the Court were to find that the time for review did begin on September 24, 2013, Sedgwick still failed to comply with the provisions of the IPP and the regulations.   Forty-five (45) days from September 24, 2013 is November 8, 2013.   Sedgwick did not render a decision

---

[16] Moreover, the administrative record reveals that Sedgwick took no formal administrative action on Plaintiff's appeal until after Plaintiff commenced this action on November 25, 2013.

by that date.   On November 7, 2013, Sedgwick notified Plaintiff via facsimile that it required

additional time, until December 7, 2013, to complete its review.   R. 746.   The notice states:

> We are currently reviewing your appeal . . . for LTD benefits denied
> to [Plaintiff] effective April 9, 2011 under the [IPP].   This letter
> will service [sic] as notice that additional time is required to
> complete the review of [Plaintiff's] claim.   We will notify you of
> our decision by December 7, 2013.

R. 746.   Thus, the notice simply states that Sedgwick requires additional time and it will render a

decision by December 7, 2013.   R. 746.   However, the IPP provides that any notice extending

the deadline for an appeal decision "will . . . inform you that a decision cannot be made within the

deadline because of reasons beyond the control of [Sedgwick]."   R. 842.   The November 7, 2013

notice does not comply with the IPP because it fails to inform Plaintiff that a decision could not

be reached by November 8, 2013, due to reasons beyond Sedgwick's control.   R. 746.   Moreover,

29 C.F.R. § 2560.503-1(i)(1)(i) provides that "[t]he extension notice shall indicate the special

circumstances requiring an extension of time. . . ."   *Id.*   The November 7, 2013 notice fails to

identify any special circumstance justifying an extension of time.   R. 746.   Thus, the November

7, 2013 notice fails to comply with the IPP and Section 2560.503-1(i)(1)(i).   Accordingly, the

undersigned finds that even if the time for Sedgwick to begin its review started on September 24,

2013, Sedgwick failed to render a timely decision by November 8, 2013, or to qualify and secure

an extension of time under the IPP or Section 2560.503-1(i)(1)(i).[17]

---

[17] In Defendants' Motion, they argue that Sedgwick substantially complied with the time requirements of the regulations.   *Wilson* II, Doc. No. 27 at 21-22 (citing *Perrino v. Southern Bell Telephone & Telegraph Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000); *Schwade v. Total Plastics, Inc.*, No. 8:10-cv-2436-T-23MAP, 837 F. Supp. 2d 1255, 1268-70 (M.D. Fla. 2011)).   The cases relied upon by Defendants stand for the proposition that a mere technical deficiency in an administrator's claim procedure, which does not deny the claimant meaningful access to the administrative procedures, does not automatically justify the waiver of the requirement of exhaustion of administrative remedies.   *See Perrino*, 209 F.3d at 1317-18; *Schwade*, 837 F. Supp. 2d at 1268-70. This case is distinguishable because here Sedgwick's actions, and primarily inaction, constitutes more than a mere technical violation.   Here, Sedgwick failed to comply with the IPP's procedures for deciding an appeal, the IPP's procedures for qualifying for and obtaining an extension of time, and the record lacks any justification for Sedgwick's failure to act.   In Defendants' response to Plaintiff's Motion, they tacitly admit to taking no action by stating that after receiving Plaintiff's August

Based on the forgoing, pursuant to 29 U.S.C. § 2560.503-1(l), it is **RECOMMENDED** that the Court find that: (1) Sedgwick failed to follow the claim procedures established by the IPP and the regulations; (2) no later than November 8, 2013, Plaintiff is deemed to have exhausted the administrative remedies available under the IPP; (3) Plaintiff's appeal is deemed denied by operation of law on that date; and (4) Plaintiff's November 25, 2013 Complaint is ripe for review under the *de novo* standard of review.

### 2. Deemed Denied Decision is *De Novo* Wrong.

While it is recommended that the Court find that Plaintiff's appeal is deemed denied no later than November 8, 2013, the inquiry is not over.   The Court must still determine whether the denial of Plaintiff's appeal by operation of law on November 8, 2013 is *de novo* wrong based on the evidence before Sedgwick at that time.   *See generally Jebian*, 349 F.3d at 1104-05 (information and rationale for denial developed by the claim administrator after the claim is deemed denied essentially amounts to *post hoc* rationalization).[18]

In short, the medical and opinion evidence demonstrates that Plaintiff's condition is unchanged from April 8, 2011, when Sedgwick discontinued Plaintiff's LTD benefits.   R. 655-672, 674-681, 683, 721-24.   Treatment records from Plaintiff's orthopedic surgeon, Dr. Hani H. El-Kommos, show that Plaintiff received regular treatment from February 28, 2011 through May 6, 2013, Plaintiff's back pain with some radiculopathy remained persistent, and Dr. El-Kommos continued to opine that Plaintiff's disability continued.   R. 674-681.   On November 16, 2011, Dr.

---

22, 2013 request to begin review, Sedgwick "waited to see" if Plaintiff would submit more records.   *Wilson* II, Doc. No. 34 at 3.   On this record, it appears the only actions Sedgwick did take were to contact Plaintiff on September 24, 2013, and to write a letter purporting to grant itself an extension of time through December 7, 2013.   R. 9, 746; *Wilson* II, Doc. No. 34 at 3-4.   In short, the record fails to support Sedgwick's claim of substantial compliance with the IPP or the regulations.   To find otherwise would render the procedures contained in the IPP and regulations meaningless.

[18] *See supra* n.11 (information considered by Sedgwick after November 8, 2013).

El-Kommos opined that Plaintiff's degenerative disc disease resulted in the following limitations: "sitting 30mins to [one hour] at a time, same for standing and walking – any longer [Plaintiff] needs to rest."   R. 683.   On August 1, 2013, Dr. El-Kommos completed a Lumbar Spine Medical Source Statement, which opines: Plaintiff's impairments can be expected to last at least twelve months; she experiences pain, difficulty sleeping, and decreased tolerance to activity; Plaintiff can walk less than one block without rest or severe pain; she can sit 30 minutes at one time and can walk 30 to 45 minutes at one time; Plaintiff can sit, stand and walk a total of 4 hours in an 8 hour workday; Plaintiff requires a job that permits shifting positions at will; Plaintiff will require unscheduled breaks every 1/2 hour for 10 to 15 minutes; and Plaintiff's impairments will result in more than four absences from work per month.   R. 721-724.   Treatment records from Plaintiff's family physician, Dr. Victor Boodhoo, demonstrate that Plaintiff received regular treatment every three months from October 8, 2012 through July 8, 2013, and those records also show that Plaintiff's diagnosis of Lumbago remained unchanged throughout that period.   R. 655-672, 732, 735.

Based on that record evidence, which was submitted after the remand in *Wilson* I through November 8, 2013, the deemed denial of Plaintiff's appeal is *de novo* wrong because the evidence shows Plaintiff has not improved and remains disabled under the IPP as of April 9, 2011. Accordingly, it is **RECOMMENDED** that the Court find Plaintiff is entitled to judgment as a matter of law.

### 3.   Remedy.

Since it is recommended that the Court find that the November 8, 2013 denial of continued LTD after April 8, 2011 was wrong, the appropriate remedy is an order reinstating Plaintiff's LTD from April 9, 2011 through the date the operative complaint was filed, with pre-judgment interest

on each monthly LTD payment from the date due until the date paid.   *See Billings v. UNUM Life Ins. Co. of Am.*, 459 F.3d 1088, 1096-97 (11th Cir. 2006) (citing and discussing *Cook v. Liberty Life Assurance Co.*, 320 F.3d 11, 23-25 (1st Cir. 2003)); *see also Colby v. Union Security Ins. Co. & Management Co. for Merrimack Anesthesia Associates Long Term Disability Plan*, 705 F.3d 58, 68 (1st Cir. 2013) (retroactive reinstatement of LTD is appropriate where case had previously been remanded to claim administrator to no avail); *Smith v. Am. Int'l Life Assurance Co. of N.Y.*, 50 F.3d 956, 957 (11th Cir. 1995) (court has discretion in ERISA action to award pre-judgment interest to claimant who succeeds at recovering benefits); *Hopp v. Aetna Life Ins. Co.*, 3 F. Supp. 3d 1335, 1338 (M.D. Fla. 2014) (awarding pre-judgment interest on each payment from the date due until date paid).   Accordingly, it is **RECOMMENDED** that the Court enter an order directing Defendants to retroactively reinstate Plaintiff's LTD from April 9, 2011 through November 25, 2013, with pre-judgment interest on each monthly LTD payment from the date due until the date paid.

In the Plaintiff's Motion, she requests that the Court remand this matter to Sedgwick for consideration of benefits after November 25, 2013.   *Wilson* II, Doc. No. 32 at 24-25.   As set forth above, it is recommended that the Court enter an order reinstating Plaintiff's LTD benefits from April 9, 2011 through November 25, 2013.   In order to determine Plaintiff's continuing eligibility for LTD after November 25, 2013, Plaintiff and Sedgwick will each need to proceed under the terms of the IPP.   *See Herring v. Aetna Life Ins. Co.*, 843 F. Supp. 2d 1305, 1308 (S.D. Fla. Feb. 14, 2012) (claim administrator free to initiate further review of claimant's continuing eligibility for benefits in the future).   Thus, there is no need for a specific remand in this matter. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's request for a remand for consideration of benefits after November 25, 2013.

### 4. Attorneys' Fees.

In the Complaint, Plaintiff requests attorneys' fees pursuant to 29 U.S.C. § 1132(g), which provides that the Court may, in its discretion, award reasonable attorneys' fees and costs to either party. *Wilson* II, Doc. No. 1 at ¶ 26. In Plaintiff's Motion, she requests an award of attorneys' fees and costs, but the motion fails to contain any memorandum of legal authority in support of the request. *Wilson* II, Doc. No. 32 at 25. In response, Defendants request an opportunity to brief the issue of entitlement to attorneys' fees and costs if the Court ultimately rules in Plaintiff's favor on summary judgment. *Wilson* II, Doc. No. 34 at 18 n.23. Thus, neither party has briefed the issues of entitlement or quantification of attorneys' fees and costs. Accordingly, it is **RECOMMENDED** that the Court: (1) order the parties to meet and confer in a good faith attempt to resolve the Plaintiff's claims for attorneys' fees and costs; and (2), in the event their negotiations prove unsuccessful, order Plaintiff to submit a motion, with supporting affidavits and a memorandum of law, addressing her claim for attorneys' fees and costs, as well as quantification of those claims within twenty-one (21) days after the Court rules on this report and recommendation.

## V.   CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **DENY** Defendants' Motion (Doc. No. 27);

2. **GRANT** Plaintiff's Motion (Doc. No. 32) as follows:

> a. Find that Sedgwick failed to follow the claim procedures established by the IPP and the regulations; no later than November 8, 2013, Plaintiff is deemed to have exhausted the administrative remedies available under the IPP; Plaintiff's

appeal is deemed denied by operation of law on that date; and Plaintiff's November 25, 2013 Complaint is ripe for review;

b.  Hold that the applicable standard of review is *de novo*;

c.  Find the denial of Plaintiff's appeal is *de novo* wrong and Plaintiff is entitled to judgment as a matter of law;

d.  Enter an order reinstating Plaintiff's LTD benefits from April 9, 2011 through November 25, 2013, the date the operative complaint was filed, with prejudgment interest on each monthly payment from the date due until the date paid;

e.  Order the parties to meet and confer in a good faith attempt to resolve the Plaintiff's claims for attorneys' fees and costs, including the quantification thereof; and

f.  In the event their negotiations prove unsuccessful, order Plaintiff to submit a motion, with supporting affidavits and a memorandum of law, addressing her claims for attorneys' fees and costs, as well as quantification of those claims within twenty-one (21) days after the Court rules on this report and recommendation;

3.  Otherwise, **DENY** the Plaintiff's Motion (Doc. No. 32).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 3, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy